## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JUNG JAE HYUNG,
DERIVATIVELY ON BEHALF
OF BIOVENTUS INC.,

       **Plaintiff,**

v.

KENNETH M. REALI, MARK L.
SINGLETON, GREGORY O.
ANGLUM, SUSAN M.
STALNECKER, WILLIAM A.
HAWKINS, III, JOHN A.
BARTHOLDSON, PATRICK J.
BEYER, PHILLIP G. COWDY,
MARY KAY LADONE,
MICHELLE MCMURRAY-
HEATH, GUIDO J. NEELS, GUY
P. NOHRA, DAVID J. PARKER,
MARTIN P. SUTTER, AND
STAVROS G. VIZIRGIANAKIS,

       **Defendants,**

**and**

BIOVENTUS INC.,

       **Nominal Defendant.**

**Court No. 1:25-cv-00806-JCG**

Court No. 1:25-cv-00806                                                                 Page 2

## OPINION AND ORDER

[Granting Defendants' Motion to Dismiss.]

Dated:  May 8, 2026

Ryan M. Ernst, Bielli & Klauder, LLC, of Wilmington, DE; Thomas J. McKenna and Gregory M. Egleston, Gainey McKenna & Egleston, of New York, N.Y. Attorneys for Plaintiff Jung Jae Hyung.

Kevin M. Coen, Morris, Nichols, Arsht, & Tunnell LLP, of Wilmington, DE; Colleen C. Smith, Latham & Watkins LLP, of San Diego, CA; Kristin N. Murphy, Latham & Watkins LLP, of Costa Mesa, CA; Jordan Mundell, Latham & Watkins LLP, of San Francisco, CA; Melange Gavin, Latham & Watkins LLP, of New York, N.Y.  Attorneys for Nominal Defendant Bioventus, Inc. and Defendants Kenneth M. Reali, Mark L. Singleton, Gregory O. Anglum, Susan M. Stalnecker, William A. Hawkins, III, John A. Bartholdson, Patrick J. Beyer, Phillip G. Cowdy, Mary Kay Ladone, Michelle McMurray-Heath, Guido J. Neels, Guy P. Nohra, David J. Parker, Martin P. Sutter and Stavros G. Vizirgianakis.

Choe-Groves, Judge:  Plaintiff Jung Jae Hyung ("Plaintiff" or "Hyung") filed this case against Nominal Defendant Bioventus, Inc. and Defendants Kenneth M. Reali, Mark L. Singleton, Gregory O. Anglum, Susan M. Stalnecker, William A. Hawkins, III, John A. Bartholdson, Patrick J. Beyer, Phillip G. Cowdy, Mary Kay Ladone, Michelle McMurray-Heath, Guido J. Neels, Guy P. Nohra, David J. Parker, Martin P. Sutter, and Stavros G. Vizirgianakis (collectively, "Defendants"). Plaintiff alleges breach of fiduciary duties, aiding and abetting, gross mismanagement, waste of corporate assets, and unjust enrichment.  Verified Am. S'holder Derivative Compl. ("Am. Compl.") at ¶¶ 241–266, (D.I. 46).

Before the Court is Defendants' Motion to Dismiss, or in the Alternative, to Stay Verified Amended Shareholder Derivative Complaint ("Motion to Dismiss") (D.I. 51).  See Mem. Law Supp. Defs.' Mot. Dismiss Alt. Stay Verified Am. S'holder Derivative Compl. ("Defs.' Br.") (D.I. 52).

For the reasons discussed below, Defendants' Motion to Dismiss is granted.

## BACKGROUND

Bioventus, Inc. ("Bioventus" or "the Company") is a medical device and drug company that sells hyaluronic acid injection products to treat osteoarthritis. Am. Compl. at ¶ 2.  Bioventus' revenues are influenced by millions of dollars in rebates that the Company is required contractually to pay back to third parties such as private insurance companies and government programs.  Id. at ¶ 3.  The Generally Accepted Accounting Principles ("GAAP") prevents Bioventus from recognizing and reporting to investors significant amounts of revenue that it will later have to remove from its financial statements due to paying out rebates.  Id. at ¶ 4.  Bioventus went public on February 10, 2021.  Id. at ¶ 6.

Plaintiff alleges that from the time of its initial public offering, the Company lacked the necessary controls to deduct rebates reliably and recognize revenue in compliance with GAAP.  Id.  Plaintiff alleges that the inaccuracies and "antiquated systems that were depending on large Excel files and manual work," were known to Defendants, who certified Securities and Exchange Commission ("SEC") filings

Court No. 1:25-cv-00806                                                    Page 4

and public statements containing material misstatements and errors.  Id. at ¶¶ 6–16.

In November 2022, the Company announced a correction to its rebates accruals.

Id. at ¶¶ 17–20, 186–207.  The corrective disclosures gave rise to a securities class

action in the United States District Court for the Middle District of North Carolina

against Bioventus and certain officers for alleged violations of Sections 10 and 20

of the Securities Exchange Act of 1934 in connection with the Company's revenue

reporting and recognition practices, and statements concerning the effectiveness of

its internal controls.  Id. at ¶¶ 208–210; see also Ciarciello v. Bioventus, Inc. et al.,

Case No. 1:23-cv-00032-CCE-JEP (M.D.N.C.).  The securities class action settled

for $15.25 million.  Am. Compl. at ¶ 210.  During the securities class action,

several Bioventus stockholders filed derivative suits, alleging breaches of fiduciary

duty:

> (1) Grogan v. Reali, Case No. 1:23-cv-01099-JCG (D. Del.) (filed on Oct. 4, 2023) (the "Grogan Action");
> (2) Sanderson v. Reali, Case No. 1:24-cv-00180-JCG (D. Del.) (filed on Feb. 9, 2024, and consolidated with Grogan);
> (3) Vince v. Reali, et al., Case No. 1:24-cv-00639-CCE-JEP (filed in the Middle District of North Carolina on July 31, 2024; transferred to the District of Delaware under the caption Vince v. Reali, et al., Case No. 2:25-cv-00060-RGA (D. Del.); voluntarily dismissed and refiled in the Court of Chancery of the State of Delaware under the caption Vince v. Reali, et al., Case No. 2025-0192-LWW); and
> (4) Bouchereau v. Reali, et al., Case No. 2025-0214-BWD (Del. Ch.) (filed on Feb. 27, 2025).

On February 6, 2025, Plaintiff made a demand (the "Demand") to the Board

of Directors (the "Board") to commence a civil action against each responsible

entity and affiliate of the Company.  Id. at ¶ 234; see Am. Compl. at Ex. A (the "Demand") (D.I. 46-2).  Plaintiff filed this case on March 6, 2025, in the United States District Court for the Middle District of North Carolina.  Verified S'holder Derivative Compl. (D.I. 1).  The Parties disputed jurisdiction, and this case was transferred to Delaware.  Order (July 1, 2025) (D.I. 36).

Plaintiff filed this Amended Complaint on September 3, 2025.  Plaintiff avers that at the time of the Amended Complaint's filing, the Board had not responded to his Demand.  Id. at ¶ 235.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Plausibility requires "more

than a sheer possibility that a defendant has acted unlawfully." Id. In considering a motion to dismiss, the Court must assume the factual allegations contained in the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Twombly, 550 U.S. at 555–56. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 678; see Donald J. Kochan, While Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307 (2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-case, contextual analysis.").

## DISCUSSION

Defendants move to dismiss the Amended Complaint for failure to comply with the stockholder demand requirements of Federal Rule of Civil Procedure 23.1. Defs.' Br. at 7. Defendants contend that even if Plaintiff can meet the pleading requirements of Rule 23.1, the Amended Complaint fails to plead particularized facts to support Plaintiff's Malone claim and related state law claims. Id. at 8. In the alternative, Defendants request that the Court stay this action pending resolution of the Company's efforts to resolve the related derivative actions. Id.

## I.      Federal Rule of Civil Procedure 23.1

### A.      Legal Standard

Federal Rule of Civil Procedure 23.1 applies "when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1(a). The derivative action may be maintained only if the plaintiff "fairly and adequately represent[s] the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Id. The plaintiff must have owned shares in the company at the time of the disputed transaction. See Fed. R. Civ. P. 23.1(b)(1).

> A complaint must be verified and "state with particularity:"
>
> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
> (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b)(3).

Thus, "Rule 23.1 requires that a shareholder plaintiff make a pre-suit demand on the board of directors prior to filing a derivative suit on behalf of the company, or to provide a satisfactory explanation for why the plaintiff has not done so." Bresalier on behalf of Duke Energy Corp. v. Good ("Bresalier"), 246 F. Supp. 3d 1044, 1051 (D. Del. 2017); see Ryan v. Gifford, 918 A.2d 341, 352 (Del.

Ch. 2007) (explaining that the demand requirement prevents frivolous lawsuits and affords the corporate machinery an opportunity to self-correct problems). "Although Rule 23.1 provides the pleading standard for derivative actions in federal court, the substantive rules for determining whether a plaintiff has satisfied that standard are a matter of state law." King ex rel. Cephalon Inc. v. Baldino, 409 Fed. App'x. 535, 537 (3d Cir. 2010) (internal quotation marks omitted). Neither party disputes that Delaware is the proper forum.

"There can be no precise rule as to how much time a Board must be given to respond to a demand." Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp., 604 F. Supp. 1106, 1117 (D. Del. 1985), aff'd, 782 F.2d 1026 (3d Cir. 1985). In cases when a shareholder serves a demand and the demand is rejected, the plaintiff has waived any argument that the board of directors was incapable of acting independently on the demand. See Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong, 66 A.3d 963, 976 (Del. Ch. 2013) ("By making a litigation demand on a board of directors, a stockholder concedes that the board is able to evaluate the demand, free from concerns of conflicts of interest or lack of independence."). "[T]he decision to refuse demand is treated as any other disinterested and independent decision of the board—it is subject to the business judgment rule," and the "only issues" left for the Court to examine are "the good faith and reasonableness of [the board's] investigation." Ironworkers Dist. Council of

Philadelphia & Vicinity Ret. & Pension Plan v. Andreotti, No. 9714-VCG, 2015 WL 2270673, at *24 (Del. Ch. May 8, 2015) (internal quotation marks omitted), aff'd sub nom., 132 A.3d 748 (Del. 2016).  "The combination of Rule 23.1 and Delaware law places on plaintiffs whose demand has been refused the 'heavy' burden of alleging 'particularized facts that raise a reasonable doubt' as to whether (1) the board's decision was 'consistent with its duty of care to act on an informed basis;' or as to whether (2) the board 'acted in good faith, consistent with its duty of loyalty.'"  Bresalier, 246 F. Supp. 3d at 1052 (citing Ironworkers Dist. Council of Philadelphia & Vicinity Ret. & Pension Plan, 2015 WL 2270673, at *24).

## B.    Premature Filing of Suit

Defendants argue that the Amended Complaint must be dismissed as premature because the Board did not refuse Plaintiff's demand before Plaintiff filed this action.  Defs.' Br. at 8–10.  Defendants aver that the approximately four weeks between Plaintiff's Demand and the filing of this suit did not provide the Board with a reasonable amount of time to investigate the Demand and make a determination.  Id.  Defendants contend that the Board has now responded to the Demand by determining that it will defer the decision to commence litigation while it directs efforts towards resolving the ongoing, related derivative actions.  Id. at 12–14; see Murphy Decl. at Ex. 1 ("the Response") (D.I. 53-1).  Defendants assert

that Plaintiff has not alleged particularized facts indicating that the Board acted in bad faith or with gross negligence in reaching its decision.  Defs.' Br. at 10–14.

Plaintiff counters that the original Complaint was in compliance with Rule 23.1 because Defendants were on notice of the alleged wrongdoing and did not need weeks or months to provide Plaintiff with a response.  Pl.'s Opp'n Defs.' Mot. Dismiss Alt. Stay ("Pl.'s Resp. Br.") at 6–7, (D.I. 54).  Plaintiff argues that he "gave the Board ample time to at least acknowledge the Demand, if not investigate the wrongdoing, given the Board's familiarity with the allegations."  Id. at 8. Plaintiff asserts that the Board's Response was provided after Plaintiff filed the Amended Complaint, and the Court cannot take judicial notice of this document in ruling upon Defendants' Motion to Dismiss.  Id. at 6.  Still, Plaintiff argues that the Amended Complaint pleads facts that cast doubt upon whether the Board's decision to deny the Demand was consistent with its duty of care to act on an informed basis and made in good faith.  Id. at 11–13.

"[T]he question in premature filing cases is not how much time is needed to respond to the demand, but whether the time between demand and filing of suit was sufficient to permit the Board of Directors to discharge its duty to consider the demand."  See Allison on Behalf of Gen. Motors Corp., 604 F. Supp. at 1117.  The complexity of the variety of issues raised in the Demand is the determining factor in whether a complaint was filed prematurely.  Id. at 1117–18.  The premature

filing of a suit after a demand has been made frustrates the underlying policy of Rule 23.1, which is "that an individual shareholder ordinarily should not usurp the responsibility of corporate management to determine whether and how to pursue a corporate claim." Weiss v. Temp. Inv. Fund, Inc., 516 F. Supp. 665, 670 n.13 (D. Del. 1981), aff'd, 692 F.2d 928 (3d Cir. 1982), vacated and remanded on other grounds, 465 U.S. 1001 (1984).

The consequence of a premature filing of suit is dismissal. See e.g., Allison on Behalf of Gen. Motors Corp., 604 F. Supp. at 1118–19 (holding that two and one-half months was insufficient for the board to investigate whether six individuals knew of alleged brake system defect and were responsible for the supply of alleged misinformation to the government); Recchion on Behalf of Westinghouse Elec. Corp. v. Kirby, 637 F. Supp. 1309, 1319 (W.D. Penn. 1986) (concluding that two months was not sufficient for a board to investigate 23 individuals for alleged violations of fiduciary duties, fraud, insider trading, and solicitation of false and misleading proxy material).

Plaintiff's Demand requested the Board to investigate and commence legal proceedings against fifteen former and current directors, executive officers, and agents of the Company. Demand at 1. The period of alleged wrongdoing was from February 11, 2021, to February 6, 2025, when the Demand was made. Id. at 2 n.2. The Demand alleges that "the absence of effective controls and inability to

accurately deduct rebates, coupled with CEO Reali's incompetent leadership, allowed Bioventus to overstate revenue and EBITDA by material amounts" for at least a year and in violation of GAAP. Id. at 3. The Demand alleges that the officers and directors ignored the material weaknesses in controls and "went on a shopping spree" to acquire two additional healthcare companies, with plans to acquire a third. Id. at 12. In addition to allegations concerning material misstatements and misrepresentations, the Demand also alleges that the officers and directors subjected the Company to the cost of defending itself in court, and unjustly enriched themselves with lucrative compensation while failing to carry out their duties. Id. at 26. Plaintiff demanded the commencement of legal proceedings for breach of fiduciary duties, gross mismanagement, corporate waste, unjust enrichment, and aiding and abetting. Id. at 26–27. Plaintiff also demanded that the Board should consider and implement "corporate governance reforms designed to address and prevent the breaches of fiduciary duty and lack of internal controls" described in the Demand. Id. at 27.

Given the number of individuals involved, the nearly four-year period of conduct to be investigated, the extent of the legal proceedings to be considered, and the requested corporate governance reforms that would address fundamental aspects of the Company's procedures, the Court concludes that four weeks was not sufficient time for the Board to complete an adequate investigation of the

allegations set forth in the Demand.  The alleged misconduct would have required an analysis of statements made over several years, earnings calls, press releases, SEC filings, and an extensive review of the Company's financial records.  Plaintiff contends that the ongoing litigation has provided the requisite amount of time to investigate, but that is contrary to the purpose of a demand, which is to afford a board the opportunity to investigate and self-correct prior to the filing of a derivative suit and not during it.

Accordingly, this case shall be dismissed without prejudice.

Court No. 1:25-cv-00806                                                                Page 14

## CONCLUSION

Upon consideration of Defendants' Motion to Dismiss (D.I. 51), and all

other papers and proceedings in this action, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (D.I. 51) is granted; and it

is further

**ORDERED** that Plaintiff's Verified Amended Shareholder Derivative

Complaint (D.I. 46) is dismissed without prejudice.

IT IS SO ORDERED this 8th day of May, 2026.


                                        /s/ Jennifer Choe-Groves

                                        Jennifer Choe-Groves

                                       U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.